# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| _____ ) | |
| NATIONSTAR MORTGAGE, LLC, ) | |
| ) | |
| Plaintiff, ) | 2:15-cv-00583-RCJ-PAL |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SFR INVESTMENTS POOL 1, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case arises out of a homeowners' association foreclosure sale. Pending before the Court are two Motions for Summary Judgment (ECF Nos. 22, 23). For the reasons given herein, the Court grants summary judgment in part to both sides but reserves several issues for trial.

## I.      FACTS AND PROCEDURAL HISTORY

Non-party John Ring purchased real property at 820 Peachy Canyon Circle, Unit #104, Las Vegas, Nevada, 89144 (the "Property"), giving non-party lender Evergreen Moneysource Mortgage Co. ("Evergreen") a $210,123 promissory note (the "Note") and a deed of trust (the "DOT") against the Property. (*See* Compl. 9–10, ECF No. 1). Non-party Dakota Condominiums Homeowners Association (the "CHOA") sold the Property to Defendant SFR Investments Pool 1, LLC ("SFR") at a non-judicial foreclosure sale for $9,200 on August 10, 2012. (*See id.* ¶¶ 12–

18).[1]  Plaintiff Nationstar Mortgage, LLC ("Nationstar") became the assignee of the DOT on March 26, 2013. (*Id.* ¶ 11).

Nationstar sued SFR in this Court to quiet title to the Property as to the validity of the sale and the continuing vitality of the DOT.  SFR answered and filed a Counterclaim to quiet title in its favor and for a permanent injunction against foreclosure under the DOT.  The parties have filed cross motions for summary judgment, each party asking the Court for defensive summary judgment against the other's claims and for offensive summary judgment on its own claims.

## II.      SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or

---

1 Although the Complaint states that "plaintiff" bought the Property, that is apparently a typographical error.  Plaintiff clearly asserts an adverse interest in the Property as against the buyer (Defendant) based on Defendant's claim that the sale extinguished Plaintiff's DOT.

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

III.   **ANALYSIS**

    **A.**   **State Law**

    **1.**   **NRS 116.3116**

There remains a genuine issue of material fact as to whether the DOT was extinguished by the CHOA's foreclosure sale under NRS 116.3116. *See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 419 (Nev. 2014).  SFR's evidence does not show that the Declaration of Covenants, Conditions, and Restrictions (the "Declaration") under which the CHOA's lien arose was recorded prior to the DOT, which is necessary for an HOA lien to extinguish a first mortgage. *See* Nev. Rev. Stat. § 116.3116(2)(a).  Although it is usually the case that declarations are recorded before first mortgages, the Court cannot simply presume that is true here.  SFR has not adduced the Declaration.  SFR has adduced only the Notice of Delinquent Assessment Lien ("NDAL").  The NDAL states that the Declaration was recorded on March 31, 1998, but the NDAL is inadmissible hearsay insofar as it is submitted to prove the date of the recording of the Declaration.  Nationstar adduces a copy of the Supplemental Declaration, but no evidence of the date of recordation of either the Declaration or the Supplemental Declaration.  There remains a genuine issue of material fact as to whether the Declaration was recorded prior to the DOT, and the Court therefore denies summary judgment to both sides as to this issue.

///

2.      **Retroactivity of** *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*

The Court has recently addressed the retroactivity of *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.* and found it not to be retroactive. *See Christiana Trust v. K&P Homes*, No. 2:15-cv-1534, 2015 WL 6962860, at *4–5 (D. Nev. Nov. 9, 2015) (Jones, J.) (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971); *Breithaupt v. USAA Prop. & Cas. Ins. Co.*, 867 P.2d 402, 405 (Nev. 1994)). It is not disputed that the foreclosure sale in this case occurred before *SFR Invs. Pool 1, LLC* was decided.  Under this Court's previous interpretation of NRS 116.3116, *see Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1225–29 (D. Nev. 2013) (Jones, J.), the CHOA foreclosure sale therefore did not extinguish the DOT regardless of their relative dates of recordation.  The Court recently certified the retroactivity issue to the Nevada Supreme Court in another case.  As noted at the hearing on the present motions, the Court will therefore not issue a ruling on the retroactivity issue at this time.  If SFR prevails at trial, the Court will then determine whether to stay judgment during the pendency of the Nevada Supreme Court's resolution of the issue.

B.      **Equitable Defenses**

1.      **Gross Inadequacy of Sale Price and Fraud, Unfairness, or Oppression**

The Nevada Supreme Court has ruled that an association's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." *Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.,* 132 Nev. Adv. Op. 5, 2016 WL 347979, at *4–6 (Nev. 2016).  The Court remanded for further fact-finding in that case but noted that the general rule for gross inadequacy was 20% of fair market value, that the Court had in the past approved sales for as low as 28.5%, and that the apparent 23% ratio in the case before it was

not "obviously" inadequate. *See id.* at *6 (citing *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev. 1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)).  The Court noted that a foreclosing entity's (or its agent's) behavior with respect to a first mortgagee's attempts to redeem the superpriority portion of an association lien before sale is relevant to fraud, unfairness, or oppression. *See id.* at *7.

Nationstar has satisfied its initial burden as to the first issue (gross inadequacy) by providing evidence that the sale price was less than 5% of the secured amount, even assuming no down payment. (*See* DOT, ECF No. 23-2 (securing $210,123); Foreclosure Deed, ECF No. 23-11 (indicating a sale for $9,200)).  Nationstar's expert estimates the fair market value at the time of sale to have been $130,000. (*See* Dugan Report, ECF No. 23-14).  Even assuming the fair market value was only half the secured amount ($105,062), the sale price was less than 9% of the fair market value, which is less than half the amount generally required to avoid a finding of gross inadequacy.  The fair market value of the Property would have to have been roughly $46,000 or less in order for the sale in this case not to have been for a grossly inadequate price.

SFR has satisfied its shifted burden, however, by providing an expert report indicating a $9,000 fair market value, (*see* Brunson Report, ECF No. 25-3).  The Court finds that a reasonable jury could accept the theory that the appropriate measure of market value should focus not on "traditional" sales of comparable properties but HOA sales of comparable properties.  Basically, the report concludes that because similar homes sold for similar amounts at similar HOA sales, its fair market value was $9,000.  These are issues for a jury to sort out. The Court will not grant summary judgment to either side on the gross inadequacy of sale price issue.

As to the second element under *Shadow Wood*, the issue in this case is not fraud, but unfairness and oppression. Proof of tender (or sufficiently attempted tender) of the superpriority portion of a lien followed by a denial of the continuing validity of the first mortgage can constitute unfairness and oppression under Nevada law, especially where an HOA or its agent attempts to extract thousands of dollars in subpriority amounts from one whose interest is subordinate only to hundreds of dollars in superpriority amounts under threat of a clouded several-hundred-thousand-dollar deed of trust after sale. However, as noted, *infra*, in this case Nationstar's own evidence tends to show that it did not tender the full superpriority amount. Under these circumstances, there is no evidence of unfairness or oppression. In summary, the Court grants summary judgment to SFR on the issue of unfairness or oppression under *Shadow Wood*.

### 2.      Commercial Unreasonableness of the Sale

> In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral. Every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable. Although the price obtained at the sale is not the sole determinative factor, nevertheless, it is one of the relevant factors in determining whether the sale was commercially reasonable. A wide discrepancy between the sale price and the value of the collateral compels close scrutiny into the commercial reasonableness of the sale.

*Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919–20 (Nev. 1977) (citations omitted). Although related, this equitable rule is Different from the equitable rule of *Shadow Wood*. The *Levers* rule is concerned with the circumstances of the sale generally, as opposed to the treatment of junior lienors in particular. Under *Shadow Wood*, gross inadequacy in price and "fraud, unfairness, or oppression" to the junior lienor are two prongs of a conjunctive test. By contrast, under *Levers* a discrepancy between the sale price and the value of the collateral is only one factor in a totality-of-the-circumstances-type test, although a "wide" discrepancy triggers closer

scrutiny of the reasonableness of other aspects of the sale.  The Court denies summary judgment to both sides on the issue of commercial unreasonableness.  Nationstar will have to prove commercial unreasonableness under *Levers* to a jury.

**C.     Effect of Tender of the Superpriority Amount and BFP Status**

**1.     Tender**

The superpriority portion of the CHOA's loan at the time of the CHOA sale included up to nine months of regular assessment fees and any charges for maintenance of the exterior of the Property or abatement of nuisances therefrom, but not collection costs or other fees. *See Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 132 Adv. Op. 35, at 13 (Nev. 2016) ("Taking into consideration the legislative intent, the statute's text, and statutory construction principles, we conclude the superpriority lien granted by NRS 116.3116(2) does not include an amount for collection fees and foreclosure costs incurred; rather it is limited to an amount equal to the common expense assessments due during the nine months before foreclosure.").  The Joint Editorial Board for Uniform Real Property Acts has opined that if the superpriority amount is redeemed prior to an HOA sale, a subsequent HOA sale based only on subpriority amounts transfers title subject to the first mortgage. (*See* Joint Editorial Board Report 12, June 1, 2013, ECF No. 23-15).  Even in the absence of such an opinion, that result is legally obvious.  If the superpriority portion of an HOA lien is redeemed prior to foreclosure, the foreclosure proceeds based on the subpriority portion of the HOA lien.  A first deed of trust is senior to the subpriority portion of the HOA lien and is therefore not extinguished by the former's foreclosure.  But that is not what the facts show happened in this case.

The monthly CHOA assessment at the relevant time was $150, so the most that could be due under this measure (nine months' worth of assessments) was $1,350. (*See* Ring Statements,

ECF No. 23-12, at 7, 9, 18, 20).  The Ring account sheet printed on November 23, 2010 indicated $1200 past due in assessments plus $150 for December 2010, with a total of $1,350 of assessments due. (*See* Ring Statement, ECF No. 20).  Nationstar argues that no more than $1,200 in fees were owed including the December 2010 assessment, and that Miles Bauer remitted a check that amount.  But Nationstar's own evidence shows that nine months of delinquent assessments totaling $1,350 were due.  The $1,200 check to NAS "To Cure HOA Deficiency" dated December 15, 2010 was $150 short of the nine months of delinquent assessments then due. (*See* Check, ECF No. 23-13, at 11).  Attorney Jung simply did the math incorrectly. (*See* Jung Letter, Dec. 16, 2010, ECF No. 23-13, at 9 ("Thus, enclosed you will find a cashier's check made out to [NAS] in the sum of $1,200.00, which represents the maximum 9 months worth of delinquent assessments recoverable by the HOA.")).  But $1,200 is *eight* months' worth of assessments at $150 per month, not nine.  Nationstar has not satisfied its initial burden to show that any party tendered the full superpriority amount of the CHOA lien prior to foreclosure.  The Court therefore grants summary judgment to SFR on this issue, as the only evidence adduced shows that $150 of the lien upon which the CHOA foreclosure was based was in priority to the DOT.

### 2.     BFP Status

The issue of the conclusiveness of deed recitals is different from the issue of bona fide purchaser ("BFP") status.  The first issue concerns a statutory presumption that can be equitably overcome under *Shadow Wood*, and the second issue concerns a buyer's knowledge of competing interests.

A "bona fide purchaser for value without notice" is a person who pays money for real property before obtaining notice of an interest in the property that would be senior to his own

interest under the traditional rule that the first-obtained title is superior to any later-obtained title. The states have enacted recording statutes that to varying degrees protect those who pay for interests in real property before obtaining notice (whether actual, constructive, or inquiry) of another party's preexisting adverse interest in the property.  Recording statutes are typically classified as "notice," "race," or "race–notice" statutes.  Nevada has a race–notice statute. *See* Nev. Rev. Stat. § 111.325 ("Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded.").  In other words, a later-obtained interest can prevail over an earlier-obtained interest in Nevada where the later purchaser has no knowledge of the previous interest and records his interest first.  It is not genuinely disputed that neither of these elements is satisfied here.  SFR had constructive notice of the DOT at the time of the CHOA sale because the DOT had been recorded, and the Foreclosure Deed was therefore of course not recorded before the DOT.

The question here turns on an interpretation of NRS 116.3116.  Because that statute as interpreted by the Nevada Supreme Court in 2014 permits the extinguishment of an earlier recorded interest by a later recorded interest, it in effect operates as an exception to the general recording statute, and BFP status under NRS 111.325 would appear to be inapposite.  The question here is whether the remedy of invalidation of the CHOA sale would be inequitable as to SFR.  The Court finds that it would not be.  Even assuming the issue were whether SFR had notice not only of the fact of a competing interest but also of the legal possibility that the DOT might survive the CHOA foreclosure sale, SFR was not an innocent purchaser in that regard. The law was not clear at the time of the sale that the CHOA sale would extinguish the DOT, and

a reasonable purchaser therefore would have perceived a serious risk that it would not.  Indeed, SFR's own appraisal expert is adamant that the reason for the low valuation was the near certainty of subsequent litigation over this point and the high uncertainty of success on the issue. The Court will not limit the remedies available in this case based on any supposed inequity to SFR of reversing the sale.

### D.     The Due Process Clause (Notice)

Because SFR asks the Court to declare of the validity of the sale via the Counterclaim, the Due Process Clause of the Fifth Amendment is implicated under the rule of *Shelley v. Kraemer*, 334 U.S. 1 (1948) if a lack of notice of the sale would have been constitutionally problematic had a state entity conducted the sale. *See U.S. Bank N.A. v. SFR Invs. Pool 1, LLC*, --- F. Supp. 3d ----, 2015 WL 5023450, at *10–14 (D. Nev. 2015) (Jones, J.).  Nationstar has satisfied its initial burden to point out that there is no evidence of constitutionally sufficient notice of the sale having been given.  SFR, however, adduces copies of certified mail receipts, including to Evergreen and MERS, apparently relating to the notice of sale. (*See* Receipts, ECF No. 22-7, at 19–24).  This is enough evidence for a jury to infer notice, but it is not enough that a jury would have to find notice.  SFR also provides direct evidence that Bank of America received a copy of the notice of sale. (*See* Klos-Mayhall Dep. 37, ECF No. 22-8).  But Evergreen and MERS held the Note and DOT, respectively, at the relevant times, not Bank of America. (*See* Assignment, ECF No. 23-3).

SFR also notes there was no state action in the foreclosure sale itself.  But although that prevents a direct Fourteenth Amendment claim by Nationstar—and SFR is therefore entitled to summary judgment on the issue as against Nationstar's own claim—under *Shelley* the Fifth Amendment is a valid defense to SFR's quiet title counterclaim. *See U.S. Bank N.A.*, 2015 WL

5023450 at *10–14.  The Court cannot put the government's imprimatur on the foreclosure in this case via a civil judgment declaring it to have been valid if there was no constitutionally sufficient notice.  The Court finds there to be a genuine issue of material fact whether there was constitutionally sufficient notice in this case and therefore denies summary judgment to either side on SFR's counterclaim for quiet title on the basis of the Due Process Clause.

### E.   The Supremacy Clause and FHA-Insured Mortgages

Nationstar raises the Supremacy Clause as an affirmative defense to the Counterclaim. Nationstar is entitled to summary judgment on this issue if it can show that the Property was FHA-insured on the date of the CHOA foreclosure.  *See Saticoy Bay LLC v. SRMOF II 2012-1 Tr.*, No. 2:13-cv-1199, 2015 WL 1990076, at *3–4 (D. Nev. Arp. 30, 2015) (Mahan, J.); *Washington & Sandhill Homeowners Ass'n v. Bank of Am.*, N.A., No. 2:13-cv-1845, 2014 WL 4798565, at *6 (D. Nev. Sept. 25, 2014) (Navarro, C.J.).  Nationstar notes that the DOT includes an FHA case number, repeatedly refers to HUD in describing payment procedures, cites to 12 U.S.C. § 1701j-3(d), a provision of the Federal Housing Act, and refers to the Single Family Mortgage Foreclosure Act.  That is enough for a jury to infer the loan was FHA-insured, but a jury would not be compelled to come to such a conclusion.  There could be other reasons why the DOT refers to FHA and HUD, and the DOT also does not show that the loan remained FHA-insured at the time of the CHOA foreclosure.  The Court therefore denies summary judgment to both sides on this issue.

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions for Summary Judgment (ECF Nos. 22, 23) are GRANTED IN PART and DENIED IN PART.  SFR is entitled to summary judgment against the Complaint as to the *Shadow Wood* issue, tender of the superpriority amount before sale, and the due process issue under the quiet title claim.  Nationstar is entitled to summary judgment against the Counterclaim as to the "BFP" issue.  The respective quiet title claims must be tried to a jury on the issues of lien priority (the comparative dates of recordation of the Declaration and the DOT), commercial unreasonableness of the CHOA sale, whether constitutional notice of the CHOA sale was given (as to SFR's counterclaim), and whether the loan was FHA-insured at the time of the CHOA sale.

IT IS SO ORDERED.

Dated this 29th day of April, 2016.

_____
ROBERT C. JONES
United States District Judge